**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MGM RESORTS GLOBAL DEVELOPMENT, LLC; and BLUE TARP REDEVELOPMENT, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, et al.,<br><br>Defendants. | Civil Action No. 1:19-cv-02377-RC |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF THE MOTION FOR LIMITED INTERVENTION BY**
**STATE OF CONNECTICUT, MOHEGAN TRIBE OF INDIANS OF CONNECTICUT,**
**AND MASHANTUCKET PEQUOT TRIBE**

## TABLE OF CONTENTS

I. INTRODUCTION ........ 1

II. BRIEF SUMMARY OF RELEVANT BACKGROUND ........ 1

III. ARGUMENT ........ 5

A. Limited Intervention is Appropriate to Vindicate the State's and the Tribes' Sovereign Interests ........ 5

B. The State and the Tribes are Entitled to Intervene as Of Right. ........ 7

1. The State and the Tribes Have Article III Standing. ........ 8

2. The State and the Tribes Satisfy The Criteria Of Rule 24(a)(2). ........ 9

a) This Motion is Timely. ........ 9

b) The State and the Tribes Have an Interest Relating to the Transaction That is the Subject of This Action. ........ 10

c) This Action Threatens To Impair the State's and the Tribes' Interest. ........ 10

d) The Intervenor-Defendants' Interests May Not Be Adequately Represented by the Federal Defendants. ........ 10

IV. CONCLUSION ........ 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akiachak Native Cmty. v. U.S. Dept. of Interior*,
584 F. Supp. 2d 1 (D.D.C. 2008)....................9

*Amador County v. Jewell*,
312 F.R.D. 11 (D.D.C. 2013) *aff'd Amador County, Cal. v. U.S. Dept. of the Interior*, 772 F.3d 901 (D.C. Cir. 2014)....................6, 7

*Cayuga Nation v. Zinke*,
324 F.R.D. 277 (D.D.C. 2018)....................9, 12

**Connecticut v. U.S. Dep't of the Interior*,
344 F. Supp. 3d 279 (D.D.C. 2018)....................8, 10, 11, 12

**Connecticut v. U.S. Dep't of the Interior*,
363 F.Supp.3d 45 (D.D.C. 2019)....................3, 8, 11

*Dimond v. District of Columbia*,
792 F.2d 179 (D.C. Cir. 1972)....................11

*Dine Citizens Against Ruining Our Environ. v. Bureau of Indian Affairs*,
932 F.3d 843 (9th Cir. 2019)....................7

*Forest Cnty.Potawatomi Cmty v. U.S.*, 317 F.R.D. 4 (D.D.C. 2016)....................12

**Fund for Animals v. Norton*,
322 F.3d 728 (D.C. Cir. 2003).................... *passim*

*Kickapoo Tribe of Indians of Kickapoo Reservation in Kansas v. Babbitt*,
43 F.3d 1491 (D.C. Cir. 1995)....................6

*Kiowa Tribe of Oklahoma v. Mfg. Techs., Inc.*,
523 U.S. 751 (1998)....................6

*Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*,
327 F. Supp. 2d 995 (W.D. Wis. 2004) aff'd, 422 F.3d 490 (7th Cir. 2005)....................7

*Mashantucket Pequot Tribe v. Connecticut*,
913 F.2d 1024 (2d Cir. 1990), *cert. denied*, 499 U.S. 975 (1991)....................2

*Michigan v. Bay Mills Indian Cmty*,
572 U.S. 782, 134 S. Ct. 2024 (2014)....................6

*Mova Pharm. Corp. v. Shalala*,
140 F.3d 1060 (D.C. Cir. 1998) ..........10

*Nat. Res. Def. Council v. Costle*,
561 F.2d 904 (D.C. Cir. 1977) ..........12

*Roane v. Leonhart*,
741 F.3d 147 (D.C. Cir. 2014) ..........9

*Santa Clara Pueblo v. Martinez*,
436 U.S. 49 (1978) ..........6

**Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt*,
331 F.R.D. 5 (D.D.C. 2019) ..........9, 10, 12

*Stand Up for California v. U.S. Dep't of the Interior*,
204 F. Supp.3d 212 (D.D.C. 2016) ..........6

*Vann v. Kempthorne*,
534 F.3d 741 (D.C. Cir. 2008) ..........6

*Zych v. Wrecked Vessel Believed to be the Lady of Elgin*, 960 F.2d 665 (7th Cir. 1992) ..........7

**Statutes**

5 U.S.C.
§§ 701, *et seq* ..........3
§ 706(2)(A) ..........5

25 U.S.C.
§§ 2701, *et seq.* ..........1
§ 2710(d)(3)(B) ..........8
§ 2710(d)(7)(B)(iv) ..........2
§ 2710(d)(7)(B)(vii) ..........2
§ 2710(d)(8) ..........3
§ 2710(d)(8)(D) ..........2

**Rules and Regulations**

Federal Rule of Civil Procedure
Rule 12(b)(6) ..........3
Rule 12(b)(7) ..........1
Rule 19 .......... *passim*
Rule 24 ..........4, 8
Rule 24(a) ..........1, 5, 6
Rule 24(a)(2) .......... *passim*
Rule12(b)(1) ..........3

Local Rule 7(n) ....................................................................................................................9

**Other Authorities**

56 Federal Register
15,746 (Apr. 17, 1991).......................................................................................................2
24,996 (May 31, 1991).......................................................................................................2

59 Federal Register 65,130 (Dec. 16, 1994) ..........................................................................2

83 Federal Register 25,484, 25,484 (June 1, 2018) .............................................................4, 11

84 Federal Register 11,122 (Mar. 25, 2019)........................................................................5, 11

## I. INTRODUCTION

The State of Connecticut (State), Mohegan Tribe of Indians of Connecticut (Mohegan Tribe) and the Mashantucket Pequot Tribe (Pequot Tribe, and with the Mohegan Tribe, the Tribes) (collectively, Intervenor-Defendants) respectfully move for intervention in this case as of right under Fed. R. Civ. P. 24(a) for the limited purpose of moving to dismiss pursuant to Fed. R. Civ. P. 19 and 12(b)(7). This Court is very well familiar with the circumstances of this case. As parties to the duly-approved amendments to the tribal-state compacts and procedures and the memoranda of understanding that Plaintiffs seek to invalidate, the Tribes and the State have an undisputed and vital interest in this litigation–one that the federal government previously demonstrated it is unable to adequately defend, and which it now fails to adequately address in its motion to dismiss. The State and the Tribes also have a well-established right to be free from unconsented suit by plaintiffs like MGM that seek to undermine their sovereign agreements, or to have this suit proceed in their absence. While the State and the Tribes agree with the reasons for dismissal raised by the federal government in its motion, this Court need not reach those issues, as dismissal under Rule 19 is both appropriate and decisive. This Court should grant this motion to intervene in order to allow the State and the Tribes to vindicate this narrow, yet paramount, interest.

## II. BRIEF SUMMARY OF RELEVANT BACKGROUND

This suit is the latest legal challenge in a dispute among Plaintiffs MGM Resorts Global Development, LLC (MGM) and Blue Tarp Redevelopment, LLC (Blue Tarp) (collectively, Plaintiffs), the United States Department of the Interior (Interior) and its officials (collectively, Federal Defendants), the State, the Mohegan Tribe, and the Pequot Tribe, that long pre-dates this litigation. Beginning in 1989, following the enactment of the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. §§ 2701, *et seq.*, the Pequot Tribe sought to negotiate a tribal-state gaming compact with the State. *See Mashantucket Pequot Tribe v. Connecticut*, 913 F.2d 1024, 1026 (2d

Cir. 1990), *cert. denied*, 499 U.S. 975 (1991). The parties were unable to reach agreement and commenced a dispute resolution mechanism in accordance with IGRA. Ultimately, this led to the adoption of a mediator-selected compact pursuant to 25 U.S.C. § 2710(d)(7)(B)(iv). *See* 56 Fed. Reg. 15,746 (Apr. 17, 1991). Interior invoked the procedures set forth in § 2710(d)(7)(B)(vii) and approved the mediator-selected compact to govern the Tribe's Class III gaming. Consistent with § 2710(d)(8)(D)'s requirement that the Secretary publish in the Federal Register "notice of any Tribal-State compact that is approved," the Secretary subsequently published notice of approval of the Pequot Compact in the Federal Register. *See id.*; 56 Fed. Reg. 24,996 (May 31, 1991). The Pequot Tribe has conducted Class III gaming consistent with the Pequot Compact since it went into effect in 1991.

Following the resolution of the legal dispute between the State and the Pequot Tribe, the Mohegan Tribe and the State also negotiated a compact, and the Secretary approved and published that compact as required by IGRA. 59 Fed. Reg. 65,130 (Dec. 16, 1994); *see also* 25 U.S.C. § 2710(d)(8)(D). The Mohegan Tribe has conducted Class III gaming in Connecticut consistent with the Mohegan Compact since it went into effect. The Pequot Compact was used as the model for the Mohegan Compact and the substantive terms of the two compacts are identical in all material respects.

In 2015, the Tribes and the State commenced discussions regarding amendments to the Pequot Procedures and Mohegan Compact and related Memoranda of Understanding (hereinafter the "Compact Amendments") to clarify that a joint venture by the Tribes to build and operate a new, off-reservation commercial gaming facility would not alter or amend the Tribes' existing agreements with the State related to the Tribes' IGRA gaming facilities. In other words, the Compact Amendments were focused on how to treat extant on-reservation gaming. After reaching

agreement with the State, both the Pequot and Mohegan Tribes submitted Compact Amendments to Interior's Office of Indian Gaming for review and approval. However, Interior thereafter failed to approve or disapprove the Compact Amendments within 45 days as required by the Part 293 Regulations and IGRA. Instead, on September 15, 2017, Michael S. Black, the Acting Assistant Secretary-Indian Affairs, wrote nearly identical letters to each Tribe's Chairman confirming Interior's receipt of the proposed Compact Amendments and purporting to "return" them to the Tribes without approving, publishing, or affirmatively disapproving them for any of the permissible reasons provided by § 2710(d)(8). This "return" was reviewable agency inaction. *See Connecticut v. U.S. Dep't of the Interior*, 363 F.Supp.3d 45, 59-60 (D.D.C. 2019).

In response to Interior's failure to approve or disapprove the Compact Amendments, in 2017 the Tribes and the State brought suit against Interior and then-Secretary of the Interior Ryan Zinke. *Connecticut v. Zinke*, U.S. Dist. Ct. for the Dist. of Conn., Case No. 1:17CV02564. The Tribes and State alleged that: 1) Interior's and Secretary Zinke's failure to approve amendments to the Tribes' respective compacts with the State and their attempt to instead "return" the submitted Compact Amendments rather than approve, disapprove, or acknowledge that they were deemed approved, was arbitrary and capricious and violated the Administrative Procedure Act, 5 U.S.C. §§ 701, *et seq.*; and 2) that Interior's failure to publish notice in the Federal Register that the Compact Amendments were deemed approved was agency action "unlawfully withheld" under the Administrative Procedure Act. *Zinke*, D. Conn. No. 1:17CV02564, Doc. 1.

Interior then moved for partial dismissal under Rules 12(b)(1) and 12(b)(6), arguing that the State and Tribes had failed to state a claim upon which relief could be granted with respect to the Pequot Tribe's submission of its Compact Amendments, and that claims regarding the Pequot Tribe should be dismissed for lack of subject matter jurisdiction because the State and Tribes had

not alleged a discrete duty the Secretary was required to take. *Zinke*, D. Conn. No. 1:17CV02564, Doc. 18. MGM sought leave to intervene in the case as of right arguing that "its ability to do business in Connecticut is directly implicated by the amendments and the relief Plaintiffs seek," and because it had an interest in the subject of the action which it alleged could be impaired by the case's resolution. *Id.,* Doc. 11. In the alternative, MGM alleged that it met the requirements for permissive intervention because it had "a claim or defense that shares common questions of law and fact with the underlying action because it seeks to defend Interior's September 2017 ruling and has a direct competitive stake in doing so" and because its intervention would not unduly prejudice the rights of the original parties. *Id.* at 3. Interior, the Tribes, and the State opposed MGM's intervention.

While the Motion to Dismiss was pending, Interior acknowledged that the Amendments to the Mohegan Compact were deemed approved and, accordingly, Interior published a notice in the Federal Register stating that the Secretary "took no action" on the amendment and that the amendment "is considered to have been approved, but only to the extent that the Amendment is consistent with IGRA." 83 Fed. Reg. 25,484, 25,484 (June 1, 2018). As a result, the Mohegan Tribe entered into a stipulation dismissing its claims against Federal Defendants, leaving the Pequot Tribe and State of Connecticut as the remaining Plaintiffs.

Following the dismissal of Mohegan, the Court simultaneously granted two motions: MGM's motion to intervene, finding that Rule 24's considerations of "timeliness, interest, impairment of interest, and adequacy of representation" dictated that MGM was entitled to intervene as a matter of right; and Interior's Motion to Dismiss the Tribes' and State's claims. *Zinke*, D. Conn. No. 1:17CV02564, Doc. 59. The Pequot Tribe and the State then filed a motion for leave to amend the Complaint, which the Court granted as to Counts I and II. *Id.,* Docs. 72 &

73. Count I alleged that Defendants' inaction in failing to approve the Compact Amendments and publish notice of its approval was arbitrary and capricious, in violation of 5 U.S.C. § 706(2)(A), because there was no legitimate basis to not approve the Amendments. Count II alleged that Interior's failure to approve the Compact Amendments was a result of undue political influence, pressures, and considerations that were directed at Interior's key decision-makers and, accordingly, was arbitrary and capricious, an abuse of discretion, and not in accordance with law. In March 2019, Interior approved the Pequot Tribe's Compact Amendments and published notice in the Federal Register of the same. *See* 84 Fed. Reg. 11,122 (Mar. 25, 2019). As a result, the Pequot Tribe and State voluntarily dismissed their claims against Interior.

On August 7, 2019, MGM filed the instant action, challenging Federal Defendants' approval of the amendments to the Mohegan Compact and approval of the Compact Amendments. The State, the Mohegan Tribe, and the Pequot Tribe now seek limited intervention in order to move to dismiss this case. As discussed in the attached Motion to Dismiss (Exhibit A) the State and the Tribes are necessary parties under Rule 19 and, as sovereigns, are all immune from suit and cannot be joined.

## III. ARGUMENT

The State and the Tribes have a vital interest in this litigation because it seeks to invalidate their sovereign-to-sovereign agreements. Limited intervention in order to vindicate this interest through dismissal under Rule 19 is appropriate. The State and the Tribes inarguably have Article III standing as prospective intervenors, and easily meet the requirements of Rule 24(a) as intervenors as of right.

### A. Limited Intervention is Appropriate to Vindicate the State's and the Tribes' Sovereign Interests

As "distinct, independent political communities" with sovereign powers that have never

been extinguished, "Indian tribes have long been recognized as possessing the common law immunity from suit traditionally enjoyed by sovereign powers." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, (1978). *See also Michigan v. Bay Mills Indian Cmty*, 572 U.S. 782, 134 S. Ct. 2024, 2031-32 (2014) (sovereign immunity extends to bar suit whether on or off-reservation, whether or not the action concerns commercial activity). As such, "[a]s a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe of Oklahoma v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998). Similarly, the State "is immune from suit under the Eleventh Amendment of the U.S. Constitution, absent consent or waiver." *Stand Up for California v. U.S. Dep't of the Interior*, 204 F. Supp.3d 212, 253 (D.D.C. 2016); *see also Kickapoo Tribe of Indians of Kickapoo Reservation in Kansas v. Babbitt*, 43 F.3d 1491, 1495-96 (D.C. Cir. 1995). As discussed in more detail in the State's and the Tribes' Motion to Dismiss, this immunity means that the State and the Tribes are indispensable parties that cannot be joined in this suit, and as a consequence, this suit must be dismissed pursuant to Fed. R. Civ. P. 19.

Federal courts routinely have recognized limited intervention as an appropriate vehicle for raising sovereign immunity objections under Rule 19. *See, e.g., Vann v. Kempthorne*, 534 F.3d 741, 745 (D.C. Cir. 2008) (holding that tribe that had intervened for the limited purpose of challenging suit on sovereign immunity grounds could not be joined under Rule 19); *Amador County v. Jewell*, 312 F.R.D. 11, 15 (D.D.C. 2013) (noting that "the Tribe *could and should* have moved for intervention several years ago" to raise Rule 19, but rejecting motion as untimely because it was filed six years after commencement of litigation) (emphasis added) *aff'd Amador County, Cal. v. U.S. Dept. of the Interior*, 772 F.3d 901, 904 (D.C. Cir. 2014); *Dine Citizens Against Ruining Our Environ. v. Bureau of Indian Affairs*, 932 F.3d 843, 847-48 (9th Cir. 2019)

(upholding dismissal of action for inability to join immune tribal party, where tribal party had "intervened in the action for the limited purpose of moving to dismiss" under Rule 19). Limited intervention is also appropriate because it preserves the sovereign immunity that the Tribes and the State seek to vindicate through their Rule 19 motion. *See Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 327 F. Supp. 2d 995, 1000 (W.D. Wis. 2004) (entities that have sovereign immunity may intervene for a limited purpose, such as moving to dismiss the lawsuit for failure to join an indispensable party, without waiving their sovereign immunity) aff'd, 422 F.3d 490 (7th Cir. 2005); *Zych v. Wrecked Vessel Believed to be the Lady of Elgin*, 960 F.2d 665, 667-68 (7th Cir. 1992) (intervention by a State for limited purpose of moving to dismiss suit of lack of jurisdiction did not result in a waiver of its immunity).

The State and the Tribes here similarly move to intervene for the limited purpose of asserting Rule 19 in order that this case may be dismissed. Limited intervention is appropriate for such purposes.

**B. The State and the Tribes are Entitled to Intervene as Of Right.**

Intervention as of right involves two distinct—but related—sets of requirements. First, as a threshold matter, a prospective intervenor must establish Article III standing. *See Fund for Animals v. Norton*, 322 F.3d 728, 732-33 (D.C. Cir. 2003). Second, Rule 24(a)(2) itself sets out four additional criteria: (1) an application to intervene must be timely; (2) the applicant must claim "an interest relating to the property or transaction that is the subject of the action"; (3) the applicant must be situated such that "disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest"; and (4) the applicant must show that existing parties may not adequately represent that interest. Fed. R. Civ. P. 24. As explained below, the State and the Tribes meet each of these requirements. They have Article III standing to intervene for the limited purpose of asserting Rule 19 (*see* part III.B.1), and satisfy each of the four criteria set out in Rule

24(a)(2) (*see* part III.B.2).

**1. The State and the Tribes Have Article III Standing.**

"To establish standing under Article III, a prospective intervenor—like any party—must show: (1) injury-in-fact, (2) causation, and (3) redressability." *Fund for Animals*, 322 F.3d at 732-33. The Intervenor-Defendants easily meet these criteria. The Intervenor-Defendants are parties to the agreements implicated by Plaintiffs' lawsuit. If Interior's decisions approving the Compact Amendments were vacated, the Tribes and the State would inarguably suffer injury, since as this Court has recognized, the effectiveness of these agreements are premised on such approval. *See Connecticut v. U.S. Dep't of the Interior*, 344 F. Supp. 3d 279, 291 (D.D.C. 2018) (*Connecticut I*) ("By their terms, both the Pequot Procedures and the Mohegan Compact may be amended only by written agreement of the tribe and the state, and the amendments do not become effective until the Secretary approves them and publishes notice of that approval in the Federal Register in accordance with 25 U.S.C. § 2710(d)(3)(B)."); *see also Connecticut v. U.S. Dep't of the Interior*, 363 F. Supp. 3d 45, 59 (D.D.C. 2019) (*Connecticut II*) (noting that Interior's previous letter returning the Compact Amendments without approval "imposes significant legal and practical consequences" on the Pequot Tribe and the State, thus "preventing Plaintiffs from moving forward with their casino project."). The cause of the State's and the Tribes' injuries would be directly traceable to Plaintiffs' requested relief. And those same injuries can be prevented if Plaintiffs' request for relief is denied by the dismissal of this action. Thus, the State and the Tribes have Article III standing for the purpose of intervention.

### 2. The State and the Tribes Satisfy The Criteria Of Rule 24(a)(2).

#### a) This Motion is Timely.

The State's and the Tribes' application for limited intervention is timely. "[T]imeliness is to be judged in consideration of all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." *Akiachak Native Cmty. v. U.S. Dept. of Interior*, 584 F. Supp. 2d 1, 5 (D.D.C. 2008) (citing *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1295 (D.C. Cir. 1980)). Here, the government was served with the Plaintiffs' Complaint on August 12 and filed its motion to dismiss on October 7, and the Plaintiffs and Interior together have sought an extension giving Plaintiffs until October 28 to respond and Interior until November 12 to reply to Interior's motion to dismiss. This Court has yet to schedule any further briefing in this case, the administrative record has yet to be finalized, and the government has not so much as produced the index of the administrative record as required by Local Rule 7(n). As noted in the attached motion to dismiss, limited intervention here for the purposes of Rule 19 is necessary to preserve the sovereign interests of both the State and the Tribes. There will be no prejudice to the existing parties in this case, as the Intervenor-Defendants' motion may be considered and resolved alongside the government's motion. Therefore, the State's and the Tribes' limited intervention will not delay the proceedings or prejudice the existing parties. Nothing more is required under Rule 24(a)(2). *See, e.g.*, *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014) (timeliness requirement "aimed primarily at preventing potential intervenors from unduly disrupting litigation"); *Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt*, 331 F.R.D. 5, 12 (D.D.C. 2019) (motion held timely where intervention would not delay briefing); *Cayuga Nation v. Zinke*, 324 F.R.D. 277, 282 (D.D.C. 2018) (same).

**b) The State and the Tribes Have an Interest Relating to the Transaction That is the Subject of This Action.**

In this Circuit, "constitutional standing is alone sufficient to establish that [intervenor] has 'an interest relating to the property or transaction which is the subject of the action.'" *Fund for Animals*, 322 F.3d at 735(citing Fed. R. Civ. P. 24(a)(2)); *see also Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir. 1998). Because the State and the Tribes have constitutional standing (*see* part III.B.1, *supra*), they also have a sufficient interest in this action to support intervention as of right. *See Connecticut I*, 344 F. Supp. 3d at 304 (a prospective intervenor with standing "*a fortiori* has an interest relating to the property or transaction which is the subject of the action") (internal quotation omitted).

**c) This Action Threatens To Impair the State's and the Tribes' Interest.**

As discussed above, this action directly threatens the effectiveness of the Compact Amendments to which the State and the Tribes are parties. For purposes of Rule 24(a)(2), the courts evaluate such threats by focusing on "the practical consequences" of denying intervention—*i.e.*, whether, as a practical matter, resolution of the case without intervention might threaten the proposed intervenors' ability to protect their interests. *Sault Ste. Marie*, 331 F.R.D. at 13 (citing *Fund for Animals*, 322 F.3d at 735). Here, the practical consequence of denying intervention would be to decide vital questions concerning the effectiveness and legality of the agreements between these sovereign governments without their presence. As such, denying this request for intervention would substantially impair (and could entirely undermine) these agreements.

**d) The Intervenor-Defendants' Interests May Not Be Adequately Represented by the Federal Defendants.**

Finally, no existing party to the litigation adequately represents the State's and the Tribes' concerns. As a threshold matter, this Court already has determined in related proceedings that the

"burden of making that showing should be treated as minimal." *Connecticut I*, 344 F. Supp. 3d at 305 (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)); *see also Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1972) (describing requirement as "not onerous"). And the Court's prior order granting MGM's intervention in that case is instructive. There, the Court granted MGM intervention, noting that "the fact that MGM and Federal Defendants presently agree on a litigation posture does not mean that Federal Defendants necessarily will adequately represent MGM's interests throughout this action, as Federal Defendants remain free to change their strategy during the course of litigation." *Connecticut I*, 344 F. Supp. 3d at 305, quoting *100Reporters LLC v. DOJ*, 307 F.R.D. 269, 280 (D.D.C. 2014) (internal brackets omitted). After the State and the Pequot Tribe "plausibly alleged that significant political pressure was brought to bear on the issue" of whether to approve the Compact Amendments, and that "the Secretary may have improperly succumbed to such pressure," *Connecticut II*, 363 F.Supp.3d at 65, Interior did in fact change its strategy, agreeing to publish notice that the Mohegan Tribe's Compact Amendments were deemed approved, and to approve the Pequot Tribe's Compact Amendments, publishing notice of the same. *See* 83 Fed. Reg. 25,484, 25,484 (June 1, 2018) (Mohegan notice); 84 Fed. Reg. 11,122 (Mar. 25, 2019) (Pequot notice). Given Interior's previous about-face, it cannot be relied upon to protect the Tribes' interest here.

At another level, the State and the Tribes are not required to show that existing parties *will not* or *cannot* represent their interests; rather, they need only explain why representation of their interests by existing parties *may be* inadequate. *Connecticut I*, 344 F. Supp. 3d at 305; *see also Fund for Animals*, 322 F.3d at 735 (applicant "should be allowed to intervene unless it is clear that [an existing] party will provide adequate representation"). The State and the Tribes easily clear this low bar. Although the Federal Defendants appear to have a general institutional interest in

defending their agency decisions and their trust responsibility to the Tribes, they have no such obligation to the State. What is more, the Federal Defendants' "overarching obligation is to represent the interests of the American people," *Id.*, quoting *Fund for Animals*, 322 F.3d at 736, while the State and the Tribes have a specific interest in their sovereign agreements. *See Forest Cnty. Potawatomi Cmty. v. U.S.*, 317 F.R.D. 6, 15 (D.D.C. 2016) (distinguishing defendant agency's general interest in upholding decision-making from intervenor tribe's specific economic and governmental concerns); *Cayuga Nation*, 324 F.R.D. at 283 (same). This is more than enough to satisfy Rule 24(a)(2). *See, e.g., Fund for Animals v. Norton*, 322 F.3d at 737 ("partial congruence of interests…does not guarantee the adequacy of representation"); *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 913 (D.C. Cir. 1977) (intervention appropriate where "the overall point of view might be shared" but applicant's "particular" interests are not represented by existing parties); *Sault Ste. Marie*, 331 F.R.D. at 13 (granting intervention where applicant had a "financial interest that the Government does not share"); *Connecticut I*, 344 F. Supp. 3d at 305 (granting intervention where intervenor's commercial interests and agency's institutional interests were distinguishable); *Forest Cnty.*, 317 F.R.D. at 14-15 (granting intervention where intervenor tribe was "concerned with preserving [its] own rights and opportunities, including [its] specific economic development goals").

## IV. CONCLUSION

For the reasons set forth above, the State, the Mohegan Tribe, and the Pequot Tribe respectfully request that their motion for limited intervention be granted.

Dated: October 22, 2019

Respectfully submitted,

/s/ Keith M. Harper

Keith M. Harper, Bar No. 451956
KHarper@kilpatricktownsend.com

Catherine F. Munson, Bar No. 985717
cmunson@kilpatricktownsend.com
Mark H. Reeves, Bar No. 1030782
mreeves@kilpatricktownsend.com
KILPATRICK TOWNSEND & STOCKTON LLP
607 14th Street, N.W., Suite 900
Washington, D.C. 20005
Telephone: 202-508-5800
Facsimile: 202-508-5858

*Attorneys for Intervenor*
*Mashantucket Pequot Tribe*

/s/ V. Heather Sibbison
Tami Azorsky, Bar No. 388572
V. Heather Sibbison, Bar No. 422632
Samuel F. Daughety, Bar No. 1021490
DENTONS US LLP
1900 K Street, NW
Washington, DC 20006-1102
Phone: (202) 496-7573
Fax: (202) 756-7756
heather.sibbison@dentons.com

*Attorneys for Intervenor*
*Mohegan Tribe of Indians of Connecticut*

/s/ Mark. F. Kohler
Mark F. Kohler
Assistant Attorney General
Mark.Kohler@ct.gov
Michael K. Skold
Assistant Attorney General
Michael.Skold@ct.gov
Connecticut Office of the Attorney General
55 Elm Street, P.O. Box 120
Hartford, CT 06141-0120
Telephone: (860) 808-5020

*Attorneys for Intervenor*
*The State of Connecticut*