**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MGM RESORTS GLOBAL DEVELOPMENT, LLC; and BLUE TARP REDEVELOPMENT, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, et al.,<br><br>Defendants. | Civil Action No. 1:19-cv-02377-RC |

**INTERVENOR TRIBES AND STATE OF CONNECTICUT'S MOTION TO DISMISS**

The Mashantucket Pequot Tribe, Mohegan Tribe of Indians of Connecticut, and the State of Connecticut hereby move, pursuant to Fed. R. Civ. P. 12(b)(7), Fed. R. Civ. P. 19, and Local Rule 7, to dismiss the Complaint filed by MGM Resorts Global Development, LLC and Blue Tarp Redevelopment, LLC against the United States Department of the Interior, Assistant Secretary of the Department of Interior Tara M. Sweeney, Principal Deputy Assistant Secretary of the Department of Interior John Tahsuda, and Secretary of the Interior David Bernhardt. Included with this motion is a memorandum of points and authorities in support of the motion.

For the reasons explained in the attached memorandum of points and authorities, Plaintiffs respectfully request that this Court grant the motion.

Dated: October __, 2019

Respectfully submitted,

/s/ Keith M. Harper

Keith M. Harper, Bar No. 451956
KHarper@kilpatricktownsend.com
Catherine F. Munson, Bar No. 985717
cmunson@kilpatricktownsend.com
Mark H. Reeves, Bar No. 1030782
mreeves@kilpatricktownsend.com

KILPATRICK TOWNSEND & STOCKTON LLP
607 14th Street, N.W., Suite 900
Washington, D.C. 20005
Telephone: 202-508-5800
Facsimile: 202-508-5858

*Attorneys for Intervenor*
*Mashantucket Pequot Tribe*

/s/ V. Heather Sibbison
Tami Azorsky, Bar No. 388572
V. Heather Sibbison, Bar No. 422632
Samuel F. Daughety, Bar No. 1021490
DENTONS US LLP
1900 K Street, NW
Washington, DC 20006-1102
Phone: (202) 496-7573
Fax: (202) 756-7756
heather.sibbison@dentons.com

*Attorneys for Intervenor*
*Mohegan Tribe of Indians of Connecticut*

/s/ Mark. F. Kohler
Mark F. Kohler
Assistant Attorney General
Mark.Kohler@ct.gov
Michael K. Skold
Assistant Attorney General
Michael.Skold@ct.gov
Connecticut Office of the Attorney General
55 Elm Street, P.O. Box 120
Hartford, CT 06141-0120
Telephone: (860) 808-5020

*Attorneys for Intervenor*
*The State of Connecticut*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MGM RESORTS GLOBAL DEVELOPMENT, LLC; and BLUE TARP REDEVELOPMENT, LLC

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF THE INTERIOR, et al.,

Defendants.

Civil Action No. 1:19-cv-02377-RC

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MASHANTUCKET PEQUOT TRIBE, MOHEGAN TRIBE, AND STATE OF CONNECTICUT'S MOTION TO DISMISS UNDER RULE 19**

**TABLE OF CONTENTS**

BACKGROUND ....................................................................................................1

ARGUMENT ....................................................................................................5

**I.** STANDARD OF REVIEW ....................................................................................................5

**A.** Motion to Dismiss Under 12(b)(7) ....................................................................................................5

**II.** The Tribes and State of Connecticut Are Necessary Parties ....................................................................................................6

**1.** The Tribes and State Have Legally Protectable Interests in Whether Amendments to Their Compacts Are Approved, and Disposing of This Action in Their Absence Would Impede Their Ability to Protect Those Interests ....................................................................................................7

**2.** The Federal Defendants Would Not Adequately Represent the Tribes or State's Interests ....................................................................................................10

**III.** Joinder of the Tribes and State is Not Feasible Because They Enjoy Immunity from Suit, Which They Have Not Waived ....................................................................................................12

**IV.** The Tribes and the State Are Indispensable Parties and the Case Cannot Proceed in Equity and Good Conscience Without Them ....................................................................................................14

**A.** The Tribes and State Will be Prejudiced If This Action Continues in Their Absence ....................................................................................................14

**B.** Relief Cannot be Shaped to Lessen Prejudice to the Tribes and State ....................................................................................................15

**C.** A Judgment Rendered in the Absence of the Tribes and State Would Not Be Adequate ....................................................................................................16

**D.** Regardless of Whether Plaintiff Would Have An Adequate Remedy, Sovereign Immunity Weighs in Favor of Dismissal ....................................................................................................17

CONCLUSION ....................................................................................................19

# TABLE OF AUTHORITIES

## Cases

*Ali v. Carnegie Inst. of Wash.*,
306 F.R.D. 20 (D.D.C. 2014), *aff'd*, 684 Fed. Appx. 985 (Fed. Cir. 2017)................... 6, 11, 16

*Am. Greyhound Racing, Inc. v. Hull*,
305 F.3d 1015 (9th Cir. 2002)........................................................................... 10, 15

*C & L Enters., Inc. v. Citizen Band Potawatomi Tribe of Okla*.,
532 U.S. 411 (2001) ............................................................................................. 13

*Cherokee Nation of Okla. v. Babbitt*,
117 F.3d 1489 (D.C. Cir. 1997) ........................................................................... 12

*Citizen Potawatomi Nation v. Salazar*,
624 F. Supp. 2d 103 (D.D.C. 2009) ................................................................... passim

*Cloverleaf Standardbred Owners v. National Bank*,
699 F.2d 1274 (D.C. Cir. 1983) ....................................................................... 15, 18

*Connecticut v. U.S. Dep't of the Interior*,
363 F.Supp.3d 45 (D.D.C. 2019) ............................................................................ 3

*Connecticut v. Zinke*,
U.S. Dist. Ct. for the Dist. of Conn., Case No. 1:17CV02564......................................... passim

*Crouse–Hinds Co. v. InterNorth, Inc.*,
634 F.2d 690 (2d Cir. 1980)................................................................................. 16

*Dellmuth v. Muth*,
491 U.S. 223 (1989) ............................................................................................. 13

*Detroit Int'l Bridge Co. v. Gov't of Canada*,
192 F. Supp. 3d 54 (D.D.C. 2016), *aff'd*, 875 F.3d 1132 (D.C. Cir. 2017).............................. 14

*Ford Motor Co. v. Dep't of Treasury of Ind*.,
323 U.S. 459 (1945) ............................................................................................. 13

*Forest Cnty. Potawatomi Cmty. v. United States*,
317 F.R.D. 6 (D.D.C. 2016) ............................................................................. 8, 9, 12

*Fund for Animals, Inc. v. Norton*,
322 F.3d 728 (D.C. Cir. 2003) ............................................................................. 12

*Kickapoo Tribe of Indians of Kickapoo Reservation in Kan. v. Babbitt*,
43 F.3d 1491 (D.C. Cir. 1995) ......................................................................... passim

*Kickapoo Tribe of Okla. v. Lujan*,
728 F. Supp. 791 (D.D.C. 1990) .......... 12, 14

*Mashantucket Pequot Tribe v. Connecticut*,
913 F.2d 1024 (2d Cir. 1990), *cert. denied* 499 U.S. 975 (1991) .......... 2

*Michigan v. Bay Mills Indian Cmty*.,
572 U.S. 782 (2014) .......... 13

*Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla*.,
498 U.S. 505 (1991) .......... 13

*Pit River Home & Agr. Co-op. Ass'n v. United States*,
30 F.3d 1088 (9th Cir. 1994) .......... 16

*Provident Tradesmens Bank & Tr. Co. v. Patterson*,
390 U.S. 102 (1968) .......... 17

*Pyramid Lake Paiute Tribe v. Burwell*,
70 F. Supp. 3d 534 (D.D.C. 2014) .......... 6, 7

*Ramah Navajo Sch. Bd., Inc. v. Babbitt*,
87 F.3d 1338 (D.C. Cir. 1996) .......... 7

*Republic of Philippines v. Pimentel*,
553 U.S. 851 (2008) .......... 6, 15, 17, 18

*Santa Clara Pueblo v. Martinez*,
436 U.S. 49 (1978) .......... 13

*Seminole Tribe of Fla. v. Florida*,
517 U.S. 44 (1996) .......... 13

*Shermoen v. United States*,
982 F.2d 1312 (9th Cir. 1992) .......... 11

*St. Pierre v. Norton*,
498 F. Supp. 2d 214 (D.D.C. 2007) .......... 14, 16

*Stand Up for California! v. U.S. Dep't of the Interior*,
204 F. Supp. 3d 212 (D.D.C. 2016) .......... 10, 14

*Stand Up for California! v. United States Dep't of Interior*,
879 F.3d 1177 (D.C. Cir. 2018) .......... 10

*Three Affiliated Tribes of Fort Berthold Indian Reservation v. United States*,
637 F. Supp. 2d 25 (D.D.C. 2009) .......... 7, 13

*United States v. Wheeler*,
435 U.S. 313 (1978) .......... 13

*W. Coast Expl. Co. v. McKay*,
213 F.2d 582 (D.C. Cir. 1954) .......... 7

*White v. Univ. of Cal.*,
765 F.3d 1010 (9th Cir. 2014) .......... 10

*Wichita & Affiliated Tribes of Okla. v. Hodel*,
788 F.2d 765 (D.C. Cir. 1986) .......... 11, 15, 16, 18

**<u>Statutes</u>**

5 U.S.C. § 701 .......... 4

5 U.S.C. § 706(2)(A) .......... 5

25 U.S.C. § 2701 .......... 2

25 U.S.C. § 2710(d)(7)(B)(iv) .......... 2

25 U.S.C. § 2710(d)(7)(B)(vii) .......... 2

25 U.S.C. § 2710(d)(8) .......... 3

25 U.S.C. § 2710(d)(8)(D) .......... 2

**<u>Rules and Regulations</u>**

56 Fed. Reg. 15,746 (Apr. 17, 1991) .......... 2

56 Fed. Reg. 24,996 (May 31, 1991) .......... 2

59 Fed. Reg. 65,130 (Dec. 16, 1994) .......... 2

83 Fed. Reg. 25,484, 25,484 (June 1, 2018) .......... 4

84 Fed. Reg. 11,122 (Mar. 25, 2019) .......... 5

Fed. R. Civ. P. 12(b)(1) .......... 4

Fed. R. Civ. P. 12(b)(6) .......... 4

Fed. R. Civ. P. 12(b)(7) .......... 1, 6

Fed. R. Civ. P. 19 .......... passim

Fed. R. Civ. P. 19(a) .......... 7, 15, 19

Fed. R. Civ. P. 19(a)(2) .......... 8

Fed. R. Civ. P. 19(b) .......... 6, 14, 15, 19

Fed. R. Civ. P. 19(b)(3) .......... 17

Fed. R. Civ. P. 24 .......... 5, 8

**Other Authorities**

3A Moore's Federal Practice ¶ 19.07–2[4] (1984) .......... 18

Charles Alan Wright & Arthur R. Miller, et al.,
7 Fed. Prac. & Proc. Civ. § 1608 (3d ed.) .......... 16

## INTRODUCTION

The Mashantucket Pequot Tribe, the Mohegan Tribe of Indians of Connecticut, and the State of Connecticut (collectively, "Intervenor-Defendants") move to dismiss the Complaint filed by Plaintiffs MGM Resorts Global Development, LLC ("MGM") and Blue Tarp Redevelopment, LLC ("Blue Tarp") (collectively, "Plaintiffs"). In this action, Plaintiffs seek to invalidate agreements entered into by the Intervenor-Defendants. The Intervenor-Defendants would be adversely affected by a decision in this action, and thus are necessary parties to this action. Under Rule 19, however, joinder of the Intervenor-Defendants is not feasible because all three are immune from suit based on their sovereign immunity. Accordingly, the Intervenor-Defendants are indispensable parties and Plaintiffs' Complaint should be dismissed under Rule 12(b)(7).

## BACKGROUND

Plaintiffs' Complaint is the latest legal challenge in a dispute among MGM, the United States Department of the Interior and various of its officials (collectively, "Interior"), the Mashantucket Pequot Tribe ("Pequot Tribe"), the Mohegan Tribe of Indians of Connecticut ("Mohegan Tribe"), and the State of Connecticut ("State") that long pre-dates this litigation. Beginning in 1989, following the enactment of the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. §§ 2701, *et seq.*, the Pequot Tribe sought to negotiate a tribal-state gaming compact with the State. *See Mashantucket Pequot Tribe v. Connecticut*, 913 F.2d 1024, 1026 (2d Cir. 1990), *cert. denied*, 499 U.S. 975 (1991). The parties were unable to reach agreement and commenced a dispute resolution mechanism in accordance with IGRA. Ultimately, this led to the adoption of a mediator-selected compact ("Pequot Compact") pursuant to 25 U.S.C. § 2710(d)(7)(B)(iv). *See* 56 Fed. Reg. 15,746 (Apr. 17, 1991). Interior invoked the procedures set forth in § 2710(d)(7)(B)(vii) and approved the mediator-selected compact to govern the Tribe's Class III gaming. Consistent with § 2710(d)(8)(D)'s requirement that the Secretary publish in the Federal Register "notice of

any Tribal-State compact that is approved," the Secretary subsequently published notice of approval of the Pequot Compact in the Federal Register. *See id.*; 56 Fed. Reg. 24,996 (May 31, 1991). The Pequot Tribe has conducted Class III gaming consistent with the Pequot Compact since it went into effect in 1991.

Following the resolution of the legal dispute between the State and the Pequot Tribe, the Mohegan Tribe and the State also negotiated a compact ("Mohegan Compact"), and the Secretary approved and published that compact as required by IGRA. 59 Fed. Reg. 65,130 (Dec. 16, 1994); *see also* 25 U.S.C. § 2710(d)(8)(D). The Mohegan Tribe has conducted Class III gaming in Connecticut consistent with the Mohegan Compact since it went into effect. The Pequot Compact was used as the model for the Mohegan Compact and the substantive terms of the two compacts are identical in all material respects.

In 2015, the Tribes and the State commenced discussions regarding amendments to the Pequot Compact and Mohegan Compact and related Memoranda of Understanding (hereinafter the "Compact Amendments") to clarify that a joint venture by the Tribes to build and operate a new, off-reservation commercial gaming facility would not alter or amend the Tribes' existing agreements with the State related to the Tribes' IGRA gaming facilities. In other words, the Compact Amendments were focused on how to treat extant on-reservation gaming. After reaching agreement with the State, both the Pequot and Mohegan Tribes submitted Compact Amendments to Interior's Office of Indian Gaming for review and approval. However, Interior thereafter failed to approve or disapprove the Compact Amendments within 45 days as required by Part 293 Regulations and IGRA. Instead, on September 15, 2017, Michael S. Black, the Acting Assistant Secretary-Indian Affairs, wrote nearly identical letters to each Tribe's Chairman confirming Interior's receipt of the proposed Compact Amendments and purporting to "return" them to the

Tribes without approving, publishing, or affirmatively disapproving them for any of the permissible reasons provided by § 2710(d)(8). This "return" was reviewable agency inaction. *See Connecticut v. U.S. Dep't of the Interior,* 363 F.Supp.3d 45, 59-60 (D.D.C. 2019).

In response to Interior's failure to approve or disapprove the Compact Amendments, in 2017 the Tribes and the State brought suit against Interior and then-Secretary of the Interior Ryan Zinke. *Connecticut v. Zinke*, U.S. Dist. Ct. for the Dist. of Conn., Case No. 1:17CV02564. The Tribes and State alleged that: 1) Interior's and Secretary Zinke's failure to approve amendments to the Tribes' respective compacts with the State and their attempt to instead "return" the submitted Compact Amendments rather than approve, disapprove, or acknowledge that they were deemed approved, was arbitrary and capricious and violated the Administrative Procedure Act, 5 U.S.C. §§ 701, *et seq.*; and 2) that Interior's failure to publish notice in the Federal Register that the Compact Amendments were deemed approved was agency action "unlawfully withheld" under the Administrative Procedure Act. *Zinke*, D. Conn. No. 1:17CV02564, Doc. 1.

Interior then moved for partial dismissal under Rules 12(b)(1) and 12(b)(6), arguing that the State and Tribes had failed to state a claim upon which relief could be granted with respect to the Pequot Tribe's submission of its Compact Amendments, and that claims regarding the Pequot Tribe should be dismissed for lack of subject matter jurisdiction because the State and Tribes had not alleged a discrete duty the Secretary was required to take. *Zinke*, D. Conn. No. 1:17CV02564, Doc. 18. MGM sought leave to intervene in the case as of right arguing that "its ability to do business in Connecticut is directly implicated by the amendments and the relief Plaintiffs seek," and because it had an interest in the subject of the action which it alleged could be impaired by the case's resolution. *Id.*, Doc. 11. In the alternative, MGM alleged that it met the requirements for permissive intervention because it had "a claim or defense that shares common questions of law

and fact with the underlying action because it seeks to defend Interior's September 2017 ruling and has a direct competitive stake in doing so" and because its intervention would not unduly prejudice the rights of the original parties. *Id.* at 3. Interior, the Tribes, and the State opposed MGM's intervention.

While the Motion to Dismiss was pending, Interior acknowledged that the Amendments to the Mohegan Compact were deemed approved and, accordingly, Interior published a notice in the Federal Register stating that the Secretary "took no action" on the amendment and that the amendment "is considered to have been approved, but only to the extent that the Amendment is consistent with IGRA." 83 Fed. Reg. 25,484, 25,484 (June 1, 2018). As a result, the Mohegan Tribe entered into a stipulation dismissing its claims against Federal Defendants, leaving the Pequot Tribe and State as the remaining Plaintiffs.

Following the dismissal of the Mohegan Tribe, the Court simultaneously granted two motions: MGM's motion to intervene, finding that Rule 24's considerations of "timeliness, interest, impairment of interest, and adequacy of representation" dictated that MGM was entitled to intervene as a matter of right; and Interior's Motion to Dismiss the Tribes' and State's claims. *Zinke*, D. Conn. No. 1:17CV02564, Doc. 59. The Pequot Tribe and the State then filed a motion for leave to amend the Complaint, which the Court granted as to Counts I and II. *Id.*, Docs. 72 & 73. Count I alleged that Defendants' inaction in failing to approve the Pequot Tribe's Compact Amendments and publish notice of its approval was arbitrary and capricious, in violation of 5 U.S.C. § 706(2)(A), because there was no legitimate basis to not approve the Amendments. Count II alleged that Interior's failure to approve the Pequot Tribe's Compact Amendments was a result of undue political influence, pressures, and considerations that were directed at Interior's key decision-makers and, accordingly, was arbitrary and capricious, an abuse of discretion, and not in

accordance with law. In March 2019, Interior approved the Pequot Tribe's Compact Amendments and published notice in the Federal Register of the same. *See* 84 Fed. Reg. 11,122 (Mar. 25, 2019). As a result, the Pequot Tribe and State voluntarily dismissed their claims against Interior.

On August 7, 2019, MGM filed the instant action against Interior and a number of its officials ("Federal Defendants") which challenged the approval of the Compact Amendments. The Pequot Tribe, Mohegan Tribe, and the State now move to dismiss because all three are necessary parties under Rule 19 and, as sovereigns, are all immune from suit and cannot be joined. Because this case cannot proceed in equity and good conscience without the Tribes and State, the Court should dismiss Plaintiffs' Complaint with prejudice.

## ARGUMENT

### I. STANDARD OF REVIEW

#### A. Motion to Dismiss Under 12(b)(7)

Rule 12(b)(7) requires dismissal of a complaint that fails to join an indispensable party under Rule 19. Rule 19 establishes a three-step process for determining whether an action must be dismissed because of the absence of a party required for a just adjudication. First, the court must determine whether the absent party is "required" for the litigation. Second, the court must determine whether joinder of the required party is "feasible." Third, if joinder is not feasible, the Court examines whether the action can nevertheless proceed in "equity and good conscience" under Rule 19(b). If not, the case must be dismissed. Fed. R. Civ. P. 19(b) ("If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed.").

In a 12(b)(7) motion, "the court accepts as true the allegations in the complaint, but also considers extrinsic evidence." *Pyramid Lake Paiute Tribe v. Burwell*, 70 F. Supp. 3d 534, 540 (D.D.C. 2014). The moving party has the burden to demonstrate that "the nature of the interest

possessed by an absent party and that the protection of that interest will be impaired by the absence." *Ali v. Carnegie Inst. of Wash.*, 306 F.R.D. 20, 25 (D.D.C. 2014), *aff'd*, 684 Fed. Appx. 985 (Fed. Cir. 2017). Multiple factors bear on the decision whether to proceed without a required person, such that the decision "must be based on factors varying with the different cases, some such factors being substantive, some procedural, some compelling by themselves, and some subject to balancing against opposing interests." *Id.* (quoting *Republic of Philippines v. Pimentel*, 553 U.S. 851, 863 (2008)).

## II. The Tribes and State of Connecticut Are Necessary Parties

Courts determine whether a party is "required" according to the factors enumerated in Rule 19(a), including whether in that person's absence, the court could accord complete relief among existing parties and whether the person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may "impair or impede the person's ability to protect the interest" or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a). This Circuit has broadly characterized necessary parties as "those affected by the judgment and against which in fact it will operate." *Citizen Potawatomi Nation v. Salazar*, 624 F. Supp. 2d 103, 112–13 (D.D.C. 2009) (quoting *W. Coast Expl. Co. v. McKay*, 213 F.2d 582, 592 (D.C. Cir. 1954)). Here, MGM challenges Interior's approval of the Compact Amendments that are contracts between the State and each Tribe individually. One can scarcely imagine a case where the interests of a party are more directly and completely at stake. Disposing of the action without the Tribes and State unquestionably would impede their ability to protect their interests, and the United States cannot adequately represent them in their absence. The Tribes and the State are therefore "required parties" under Rule 19 as demonstrated in greater detail below.

### 1. The Tribes and State Have Legally Protectable Interests in Whether Amendments to Their Compacts Are Approved, and Disposing of This Action in Their Absence Would Impede Their Ability to Protect Those Interests

Under Rule 19, a party is "interested" if it has a legally protected interest in property or rights to be adjudicated by the case. *Pyramid Lake Paiute*, 70 F. Supp. 3d at 541; *Ramah Navajo Sch. Bd., Inc. v. Babbitt*, 87 F.3d 1338, 1351 (D.C. Cir. 1996), *amended* (Aug. 6, 1996); *Three Affiliated Tribes of Fort Berthold Indian Reservation v. United States*, 637 F. Supp. 2d 25, 30 (D.D.C. 2009). Importantly, "Rule 19, by its plain language, does not require the absent party to actually possess an interest; it only requires the movant to show that the absent party 'claims an interest relating to the subject of the action.'" *Davis v. United States*, 192 F.3d 951, 958 (10th Cir. 1999) (quoting Fed. R. Civ. P. 19(a)(2)). Consequently, Rule 19 excludes only those claimed interests that are "patently frivolous." *Citizen Potawatomi*, 624 F. Supp. 2d at 113.

Here, the Tribes' and State's substantial interests in the rights to be adjudicated by this case are self-evident from the Complaint itself – in MGM's own words, it:

> challenges Interior's unlawful approval of amendments to (1) the compact between the Mohegan Tribe of Indians of Connecticut and the State of Connecticut, (2) the secretarial procedures prescribed for the Mashantucket Pequot Indian Tribe, (3) the memorandum of Understanding between the Mashantucket Pequot Indian Tribe and the State of Connecticut, and, to the extent applicable, (4) the Memorandum of Understanding between the Mohegan Tribe of Indians of Connecticut and the State of Connecticut.

Doc. 1 at 1–2. The Complaint makes clear that MGM's suit is based on the perceived "competitive disadvantage" it will incur if Interior's approvals of the Compact Amendments are not reversed. *See id.* at ¶¶ 86–94. By way of relief, MGM seeks not only a declaration that Interior's approval decisions are in excess of its statutory authority and are arbitrary and capricious, but also for the Court to vacate the Federal-Defendants' approval decisions. *Id.* at 3.

It is indisputable that the Tribes and the State would be harmed by vacatur or invalidation of the approvals of their Compact Amendments. Indeed, a recent similar case directly supports the importance of the interest that the Tribes and State claim. In *Forest Cnty. Potawatomi Cmty. v. United States*, 317 F.R.D. 6 (D.D.C. 2016), this Court held that the Menominee Indian Tribe of Wisconsin had a legally protected interest under Rule 24,[1] supporting its intervention in a case where another tribe sought to reverse an Interior decision favorable to Menominee. This Court held that the action "threaten[ed] to impair" the Menominee's interest because "the challenged decision was favorable to the Menominee, and the present action is a direct attack on that decision." *Id.* at 14. As a result, the Court found that "the requested relief, if granted, would, as a practical matter, impede the Menominee's efforts … to develop a gaming facility" and "could seriously impair the ability of the Menominee to protect their interests." *Id.*

Similarly, MGM moved to intervene in *Connecticut v. Zinke*—the predecessor case to this action wherein the Tribes and State challenged Interior's initial failure to approve the Compact Amendments—arguing that it had a legally protected interest in the action and that its interests could be impaired by disposition of the lawsuit in its absence. *Zinke*, D. Conn. No. 1:17CV02564, Doc. 11-1 at 16–17. Specifically, MGM claimed that it had "interests in the Connecticut casino-gaming market—both as a developer of a proposed commercial casino in Bridgeport and as operator of MGM Springfield" and that "[a]pproval of the Amendments would undermine those interests by granting valuable rights exclusively to the Tribes, a rival to MGM in the Connecticut market." *Id.* at 1–2. In granting MGM's motion, this Court relied heavily on *Forest County* to conclude that "MGM would be sufficiently injured by the relief sought by Plaintiffs—the

[1] Rule 24, which governs intervention, requires a similar showing to Rule 19—that the applicant "claims an interest" in the subject of the action—and similarly considers whether disposition of the action would impair or impede the applicant's ability to protect that interest.

Secretary's approval of Plaintiffs' proposed amendments to the Pequot Compact—to convey standing to intervene." Doc. 59 at 17.

The same logic applies with even greater force here: If MGM had a legally protected interest in the Tribes' and State's Compact Amendments, then *a fortiori* the Tribes and State have a legally protected interest in ensuring the validity of the Compact Amendments. Just as in *Forest County*, the challenged decision in this case—approval of the Compact Amendments—was favorable to the Tribes and the State, and the present action is a "direct attack on that decision." Moreover, MGM's "requested relief, if granted, would, as a practical matter, impede" the Tribes' and State's efforts to clarify that an off-reservation non-IGRA gaming facility would not disturb settled arrangements under existing agreements regarding IGRA-permitted gaming and, accordingly, "could seriously impair the ability of the [Tribes] to protect their interests." *Id.* Just as MGM (like Menominee) was found to have legally protectable interests in litigation challenging the United States' disapproval of the Compact Amendments, the Tribes and State now hold an interest in the current litigation challenging Federal Defendants' subsequent approval of those same Compact Amendments. *See Stand Up for California! v. U.S. Dep't of the Interior*, 204 F. Supp. 3d 212, 253 (D.D.C. 2016), *aff'd sub nom. Stand Up for California! v. United States Dep't of Interior*, 879 F.3d 1177 (D.C. Cir. 2018) (holding California to be a necessary party to APA lawsuit challenging Interior's decision to approve construction of off-reservation Casino site because the state "would be unavoidably prejudiced by a judgment rendered in its absence"); *White v. Univ. of Cal.*, 765 F.3d 1010, 1027 (9th Cir. 2014) (finding tribes to be necessary parties because their interests would "unquestionably be 'impaired or impeded' if the suit were allowed to proceed without [them]"); *Citizen Potawatomi Nation v. Salazar*, 624 F. Supp. 2d 103, 113 (D.D.C. 2009) (concluding that non-party tribes needed to be joined because they had "a legitimate and non-

frivolous interest in the outcome of this litigation"); *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1023, 1024 (9th Cir. 2002) (finding that Tribe's interest arose from the terms of the bargained contracts and determining that the "sovereign power of the tribes to negotiate compacts [would be] impaired.").

#### 2. The Federal Defendants Would Not Adequately Represent the Tribes or State's Interests

Since the Tribes and State clearly have substantial and demonstrable interests in this case, the Court must next determine whether an existing party adequately represents those interests. *See Carnegie Inst.*, 306 F.R.D. at 33 (granting motion to dismiss on Rule 19 grounds where defendant could not adequately represent necessary non-party's interests). Here, the United States cannot adequately represent either state or tribal interests because representation can only be "adequate" where no potential conflict exists between the United States and the non-party. *Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992) (even where the United States might have "share[d] the same ultimate goal as the absent tribes," it could not "sufficiently represent the competing interests and divergent concerns of the tribes, for the government must also act in keeping with its role and obligations as trustee"); *Wichita & Affiliated Tribes of Okla. v. Hodel*, 788 F.2d 765, 775 (D.C. Cir. 1986) (where "there is a conflict between the interests of the United States and the interests of Indians, representation of the Indians by the United States is not adequate").

This case would be a particularly problematic instance to permit the United States to represent the Tribes' or the State's interest given the litigation history regarding these Compact Amendments. Recall that despite Interior's repeated assurances that the Compact Amendments were acceptable and would be approved, the Secretary made an eleventh hour about-face and unlawfully purported to "return" the Compact Amendments after he had received significant political pressure from outside Interior. *See generally Zinke*, D. Conn. No. 1:17CV02564, Doc. 73.

This forced the Tribes and State to bring a costly lawsuit. While Defendants ultimately followed the law, belatedly recognizing the deemed approval of Mohegan's Compact Amendment and approving Pequot's Compact Amendment seriatim, the procedural history of this case and the related litigation establishes that the Tribes and the State cannot rely on the United States to protect their interests in this matter.

The history here recalls that of *Cherokee Nation of Okla. v. Babbitt*, 117 F.3d 1489 (D.C. Cir. 1997), where the D.C. Circuit held that the Department of Interior could not adequately represent the interests of the Delaware Tribe:

> Here, although the Delawares and the Department currently take the same position regarding the Delawares' sovereignty, and to that extent their interests are the same, the Department has twice reversed its position regarding the Delawares since 1940. Given the procedure used to reach the Final Decision at issue, the Department may reverse itself again. Moreover, even were the Department vigorously to represent the Delawares … the Department might decide not to appeal any unfavorable decision. As a non-party, the Delawares would have no right to appeal, regardless of whether the Department's decision was based on its view of the merits or on other considerations.

*Id.* at 1497. As it had in *Cherokee Nation*, Interior has previously reversed course on the issue at bar. And, as in *Cherokee Nation*, even if Interior maintains its current, correct position for the course of this litigation, there can be no guarantee that it will take all of the positions that the Tribes and State might urge or that it will devote resources to an appeal of any adverse ruling.

Finally, the Court must bear in mind that "courts in this Circuit 'have often concluded that governmental entities do not adequately represent the interests of aspiring intervenors.'" *Forest Cnty.*, 317 F.R.D. at 14 (quoting *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003)). The federal government and its agencies represent the interests of the American public as a whole, whereas the State and the Tribes represent their own interests and those of their citizens. While those interests may overlap, there is no guarantee that it will remain the case. This alone is

sufficient to meet the Tribes' and State's "minimal burden of showing that their interests may not be adequately represented by the existing parties in the action." *Forest Cnty.*, 317 F.R.D. at 15. As neither the Tribes nor the State can rely on Federal Defendants to adequately represent their interests, they remain necessary parties to this case. *Kickapoo Tribe of Okla. v. Lujan*, 728 F. Supp. 791, 797 (D.D.C. 1990) ("*Kickapoo I*").

### III. Joinder of the Tribes and State is Not Feasible Because They Enjoy Immunity from Suit, Which They Have Not Waived

Under the Eleventh Amendment to the United States Constitution, a state sovereign is immune from suit, absent consent or waiver. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996). While Congress can abrogate this immunity, its intent to do so must be "unmistakably clear." *See Dellmuth v. Muth*, 491 U.S. 223, 228 (1989). Likewise, a state can waive its immunity but only by explicit authorization in state law that is "express and unequivocal." *See Ford Motor Co. v. Dep't of Treasury of Ind.*, 323 U.S. 459, 467–68 (1945).

Similarly, it has long-been recognized that Indian tribes are immune from suit absent unequivocal waiver or abrogation by Congress. Indian tribes are "domestic dependent nations" that exercise inherent sovereign authority over their members and territories. *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 509 (1991). Unless and "until Congress acts, the tribes retain" their historic sovereign authority. *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 782-783 (2014) (quoting *United States v. Wheeler*, 435 U.S. 313, 323 (1978)). Tribal sovereign immunity "is a necessary corollary to Indian sovereignty and self-governance." *Three Affiliated Tribes*, 476 U.S. at 890.

Among the core aspects of sovereignty that tribes possess—subject to congressional action—is the "common-law immunity from suit traditionally enjoyed by sovereign powers." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978). That immunity applies even where a suit

arises from a tribe's commercial activities off Indian lands, *see Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751 (1998). Therefore, unless Congress has "unequivocally" authorized suit, *C & L Enters., Inc. v. Citizen Band Potawatomi Tribe of Okla.*, 532 U.S. 411 (2001), the case must be dismissed.

This Court and the Court of Appeals for the D.C. Circuit repeatedly have held that tribes may not be joined under Rule 19 where they have not consented to suit. *Kickapoo I*, 728 F. Supp. at 797; *Citizen Potawatomi*, 624 F. Supp. 2d at 114; *St. Pierre v. Norton*, 498 F. Supp. 2d 214, 220 (D.D.C. 2007). This Court and the Court of Appeals have further held that states cannot be joined under Rule 19 where they have not waived their immunity. *Detroit Int'l Bridge Co. v. Gov't of Canada*, 192 F. Supp. 3d 54, 70 (D.D.C. 2016), *aff'd*, 875 F.3d 1132 (D.C. Cir. 2017); *Kickapoo Tribe of Indians of Kickapoo Reservation in Kan. v. Babbitt*, 43 F.3d 1491, 1500 (D.C. Cir. 1995) ("*Kickapoo II*"); *Pueblo of Sandia*, 47 F. Supp. 2d at 52.

Moreover, this Court specifically has found that where an indispensable party cannot be joined, particularly where that indispensable party enjoys sovereign immunity, review is not available even if it otherwise would have been. *Stand Up for California!*, 204 F. Supp. 3d at 252. There, this Court emphasized that:

> Sovereign immunity is such a compelling interest that the inquiry as to whether an absent person is an indispensable party required to be joined is more circumscribed with respect to assessing whether a lawsuit can proceed in the absence of a necessary party that is also immune from suit, such that, where the party would be unavoidably prejudiced by a judgment rendered in its absence, grounds exist to dismiss the case without consideration of any additional factors.

*Id.* at 253–54.

Here, neither the State nor the Tribes have waived immunity for purposes of this lawsuit, nor has Congress abrogated their immunity. In the absence of waiver or abrogation, neither the Tribes nor the State can be joined in the instant litigation and the case is properly dismissed.

## IV. The Tribes and the State Are Indispensable Parties and the Case Cannot Proceed in Equity and Good Conscience Without Them

Because the Tribes and the State are required parties that cannot feasibly be joined, the Court must determine whether this case can proceed without them in equity and good conscience. Fed. R. Civ. P. 19(b). Rule 19(b) lists four factors for courts to consider when deciding whether to proceed without necessary parties that cannot be joined. However, the D.C. Circuit has observed that where, as here, a required party cannot be joined because it is immune from suit, "there is very little room for balancing of other factors." *Kickapoo II*, 43 F.3d at 1496.

Subject to the D.C. Circuit's admonition in *Kickapoo II*, Rule 19(b) directs the Court to weigh: 1) the extent of prejudice to non-parties; 2) its ability to shape a remedy to lessen that prejudice; 3) whether a decision would be adequate without absent parties; and 4) whether the plaintiff would have an adequate remedy if the claims were dismissed. Fed. R. Civ. P. 19; *Citizen Potawatomi*, 624 F.Supp.2d at 113–14. "These four factors are not rigid, technical tests, but rather 'guides to the overarching "equity and good conscience" determination.'" *Wichita*, 788 F.2d at 774 (quoting *Cloverleaf Standardbred Owners v. National Bank*, 699 F.2d 1274, 1279 n. 11 (D.C. Cir. 1983)). Here, the weighing of these four factors leads inexorably to the conclusion that the Tribes and State are indispensable parties without which this action cannot proceed, and that therefore the case must be dismissed.

### A. The Tribes and State Will be Prejudiced If This Action Continues in Their Absence

To the extent it focuses on the absent party, the factor of prejudice "largely duplicates the consideration that made a party necessary under Rule 19(a): a protectable interest that will be impaired or impeded by the party's absence." *Am. Greyhound*, 305 F.3d at 1024–25. Further, "[t]he privilege of sovereign immunity from suit is much diminished if an important and consequential ruling affecting the sovereign's substantial interest is determined, or at least assumed, by a federal

court in its absence and over its objection." *Pimentel*, 553 U.S. at 868-869. In this case, it would be prejudicial to proceed without the Tribes and the State for the same reasons articulated above with respect to the Tribes' and State's interests in this action: Interior's decision to confirm that the Compact Amendments are approved directly benefits the Tribes and State, and Plaintiffs have mounted a "direct attack on that decision." A court order in favor of Plaintiffs vacating Interior's approval decisions would have a direct, negative impact on the Tribes' ability to clarify that a new off-reservation gaming facility will not impact arrangements regarding extant IGRA on-reservation gaming. Accordingly, this would have concrete financial impacts on the Tribes and the State. Allowing this case to proceed without the Tribes and the State would thus unquestionably impair their ability to protect their own interests. *See Kickapoo II*, 43 F.3d at 1500 (holding state to be indispensable and noting that "not only its contractual rights are at issue but its fiscal interests are also potentially at stake."). *See also Crouse–Hinds Co. v. InterNorth, Inc.*, 634 F.2d 690, 701 (2d Cir. 1980) (parties to a contract are indispensable parties to suit challenging validity of contract). This factor weighs in favor of dismissal.

### B. Relief Cannot be Shaped to Lessen Prejudice to the Tribes and State

With respect to the second factor, whether relief can be shaped to lessen the prejudice, this "calls the court's attention to the possibility of granting remedies other than those specifically requested that would not be merely partial or hollow but would minimize or eliminate any prejudicial effect of going forward without the absentees." *Carnegie Inst*, 306 F.R.D. at 30 (quoting Charles Alan Wright & Arthur R. Miller, et al., 7 Fed. Prac. & Proc. Civ. § 1608 (3d ed.)). Courts generally have found that where tribal interests are at stake, any decision adverse to the Tribes, no matter how it is framed, will be prejudicial. *See St. Pierre*, 498 F. Supp. 2d at 220 (concluding that the case could not move forward without the tribe because it would "undoubtedly be prejudicial," and relief could not be shaped so as not to prejudice the tribe); *Wichita*, 788 F.2d

at 776 (finding "any relief that the [Plaintiffs] obtain in this case will have an inevitable effect on" the non-party tribes); *Pit River Home & Agr. Co-op. Ass'n v. United States*, 30 F.3d 1088, 1101–02 (9th Cir. 1994) (finding "there is no relief or remedy that would lessen the prejudice the [Tribal] Council would suffer if we decided this action in their absence.").

Here, it is impossible to shape relief or provide other measures that will lessen or avoid prejudice against the interests of the Tribes and the State. MGM seeks reversal of Interior decisions favorable to the Tribes and State; the Tribes and the State believe that those decisions are correct and should be upheld. A decision in this action will either leave the Compact Amendments approved and in effect, or will reverse such approvals and cause them to be ineffective. It is a zero-sum game that leaves the Court no room to shape relief that accomplishes Plaintiffs' litigation goals while protecting the interests of the absentee Tribes and State. This factor also weighs in favor of dismissal.

The Court need proceed no further. Per the D.C. Circuit, where an absent party with immunity will be prejudiced by a judgment rendered in its absence and there is no way to tailor relief to avoid that prejudice, a district court "ha[s] grounds to dismiss the complaint for fail[ing] to join an indispensable party without consideration of any other factors." *Kickapoo II*, 43 F.3d at 1498 (reversing, as an abuse of discretion, denial of an absent sovereign's Rule 19 motion to dismiss when the denial was based on the consideration of additional factors). Should the Court wish to consider additional factors, however, the balance continues to tip strongly in favor of dismissal.

### C. A Judgment Rendered in the Absence of the Tribes and State Would Not Be Adequate

In the context of Rule 19(b)(3), which sets forth as a factor in whether joinder is feasible as to "whether a judgment rendered in the person's absence would be adequate," "adequacy refers

to the 'public stake in settling disputes by wholes, whenever possible.'" *Pimentel,* 553 U.S. at 870 (quoting *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 111 (1968)). This "'social interest in the efficient administration of justice and the avoidance of multiple litigation' is an interest that has 'traditionally been thought to support compulsory joinder of absent and potentially adverse claimants.'" *Pimentel,* 553 U.S. at 870. Proceeding with an action without necessary parties does not further the public interest in settling the dispute as a whole where, as here, the absent parties in an action would not be bound by the judgment. *See Cloverleaf*, 699 F.2d at 1279 (absent participation of the non-party, whose rights might be detrimentally affected, there could be no complete settlement of the controversy). And to the extent that a judgment rendered in the absence of the State and the Tribes would effectively bind them and prevent further, multiple litigation, that fact only underscores the substantial nature of the prejudice that the Tribes and State face if this action proceeds without them.

### D. Regardless of Whether Plaintiff Would Have An Adequate Remedy, Sovereign Immunity Weighs in Favor of Dismissal

With respect to the fourth consideration—whether the plaintiff would have an adequate remedy if the claims were dismissed—this Court has held that even where there is no alternative forum, "the weighty competing interest of preserving tribal sovereign immunity is paramount." *Citizen Potawatomi*, 624 F.Supp.2d at 114. Thus, "[w]hile a court should be extra cautious in dismissing a case for nonjoinder where the plaintiff will not have an adequate remedy elsewhere, 'this does not mean that an action should proceed solely because the plaintiff otherwise would not have an adequate remedy, as this would be a misconstruction of the rule and would contravene the established doctrine of indispensability.'" *Wichita*, 788 F.2d at 777 (quoting 3A Moore's Federal Practice ¶ 19.07–2[4], at 19–153 (1984)). Accordingly, the fourth factor, combined with "the fact

that the litigation should not proceed simply because an adequate alternative does not exist," "strongly favors dismissal." *Citizen Potawatomi*, 624 F. Supp. 2d at 114.

The importance of sovereign immunity was at the heart of the decision in *Kickapoo II*, 43 F.3d at 1496, referenced *supra*. In that case, the Kickapoo Tribe brought suit against the Secretary of the Interior, seeking a declaration that a compact between the Tribe and the State of Kansas to allow gambling on the Tribe's land was approved under IGRA, and seeking a writ of mandamus directing the Secretary to comply with the Act and publish the compact in Federal Register. *Id.* at 1494. The Secretary moved to dismiss the Tribe's lawsuit on the ground that the State of Kansas was an indispensable party under Rule 19 and was not joined in the litigation. *Id.* After determining that Kansas was a necessary party, the Court then turned to whether it could proceed in equity and good conscience. The Court explained that: "there is very little room for balancing of other factors set out in Rule 19(b) where a necessary party under Rule 19(a) is immune from suit because immunity may be viewed as one of those interests compelling by themselves." *Id.* at 1496–97 (internal citations omitted). Accordingly, the Court held that "while the absence of an alternative forum is properly weighed heavily against dismissal, the state's immunity counters against proceeding; even if the Tribe lacked an adequate remedy by which to vindicate its statutory rights, absence of an alternative remedy alone does not dictate retention of jurisdiction under Rule 19." *Id.* at 1499.

Thus, irrespective of what other forum MGM may or may not have to litigate its challenge to Federal Defendants' actions, the Court should dismiss this action because it cannot join the Tribes or State as indispensable parties.

## CONCLUSION

For the foregoing reasons, the Tribes and State are necessary and indispensable parties that cannot be joined because of their immunity from suit. Accordingly, the motion to dismiss Plaintiffs' Complaint should be granted.

Dated: October __, 2019

Respectfully submitted,

/s/ Keith M. Harper
Keith M. Harper, Bar No. 451956
KHarper@kilpatricktownsend.com
Catherine F. Munson, Bar No. 985717
cmunson@kilpatricktownsend.com
Mark H. Reeves, Bar No. 1030782
mreeves@kilpatricktownsend.com
KILPATRICK TOWNSEND & STOCKTON LLP
607 14th Street, N.W., Suite 900
Washington, D.C. 20005
Telephone: 202-508-5800
Facsimile: 202-508-5858

*Attorneys for Intervenor*
*Mashantucket Pequot Tribe*

/s/ V. Heather Sibbison
Tami Azorsky, Bar No. 388572
V. Heather Sibbison, Bar No. 422632
Samuel F. Daughety, Bar No. 1021490
DENTONS US LLP
1900 K Street, NW
Washington, DC 20006-1102
Phone: (202) 496-7573
Fax: (202) 756-7756
heather.sibbison@dentons.com

*Attorneys for Intervenor*
*Mohegan Tribe of Indians of Connecticut*

/s/ Mark. F. Kohler
Mark F. Kohler
Assistant Attorney General
Mark.Kohler@ct.gov
Michael K. Skold

Assistant Attorney General
Michael.Skold@ct.gov
Connecticut Office of the Attorney General
55 Elm Street, P.O. Box 120
Hartford, CT 06141-0120
Telephone: (860) 808-5020

*Attorneys for Intervenor*
*The State of Connecticut*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MGM RESORTS GLOBAL DEVELOPMENT, LLC; and BLUE TARP REDEVELOPMENT, LLC,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF THE INTERIOR, et al.,

Defendants.

Civil Action No. 1:19-cv-02377-RC

**CERTIFICATE OF SERVICE**

I hereby certify that on October __, 2019, I electronically filed the foregoing with the clerk of the Court using the CM/ECF system which will send notification of such filing to the parties registered in the Court's CM/ECF system.

/s/ Keith M. Harper
Keith M. Harper