**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| MGM GLOBAL RESORTS DEVELOPMENT, | : | | |
| LLC, AND BLUE TARP REDEVELOPMENT | : | | |
| LLC | : | Civil Action No.: | 19-2377 (RC) |
| Plaintiffs, | : | | |
| | : | | |
| v. | : | Re Document Nos.: | 24, 28 |
| | : | | |
| UNITED STATES DEPARTMENT OF THE | : | | |
| INTERIOR, et al., | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

**GRANTING MOTION FOR LIMITED INTERVENTION;**
**DENYING AS MOOT MOTION FOR SCHEDULING ORDER**

Before the Court are relatively preliminary motions in the latest round of litigation in a

long-running battle over a stalled casino project in East Windsor, Connecticut.  Not long ago, the

State of Connecticut ("Connecticut"), the Mashantucket Pequot Tribe (the "Pequot"), and the

Mohegan Tribe of Indians of Connecticut (the "Mohegan") (together with the Pequot, the

"Tribes") sued the Department of the Interior seeking administrative approval of certain

amendments (the "Amendments") to certain agreements between the Connecticut and the Tribes.

Interior's approval was necessary to give effect to the Amendments, which would have cleared

the way for the development of the East Windsor casino.  Plaintiffs here, MGM Global Blue

Resorts Development LLC and Blue Tarp Redevelopment LLC (together "MGM"), intervened in

that case based on competitive harms they would suffer if the Amendments were approved by

Interior.  That case resolved itself when Interior approved the Amendments.  Now the same

parties have returned to this Court, but their alliances have shifted.  This time MGM is suing

Interior and related government defendants (collectively, the "Government Defendants") in an effort to unravel the Government's approval of the Amendments.  Connecticut and the Tribes (together, "Movants") now move to intervene alongside the Government Defendants on a limited basis to argue that they are an indispensable party to the action which, they say, must be dismissed because their sovereign immunity makes their joinder here impossible.

At the moment the Court considers only whether this limited intervention should be allowed.  Because the Court concludes that it should, the Court grants Movants' motion to intervene and will allow the filing of the Movants' proposed Motion to Dismiss.  That motion will need to be briefed before the Court can address the sovereign immunity argument and other arguments for dismissal raised by the Government Defendants in their own pending Motion to Dismiss.  The Court also addresses a pending motion concerning scheduling below.

## I.  BACKGROUND

In earlier opinions in a related case, the Court has recounted in more detail the factual and procedural history among the participants here.  *See Connecticut v. U.S. Dep't of the Interior* ("*Connecticut I*"), 344 F. Supp. 3d 279, 288–95 (D.D.C. 2018); *Connecticut v. U.S. Dep't of the Interior* ("*Connecticut II*"), 363 F. Supp. 3d 45, 51–54 (D.D.C. 2019).  In future opinions the Court will have the opportunity to do so again, as there is at least one dispositive motion already pending in this current case.  *See* Motion to Dismiss, ECF No. 16.  For now, the Court provides only the broad overview necessary to resolve the instant motions for intervention and for a scheduling order.  The Court relies on its prior opinions here, as well as on both the Motion to Intervene and MGM's complaint because "motions to intervene are usually evaluated on the basis of well pleaded matters in the motion, the complaint, and any responses of opponents to intervention."  *Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981).

MGM's claims in the Complaint are brought primarily under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, and the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701–2721.  The IGRA governs Class III casino gaming—blackjack, roulette, and other table games—on tribal land. 25 U.S.C. §2710(d); 25 C.F.R. § 502.4; *Amador Cty. v. Salazar*, 640 F.3d 373, 376 (D.C. Cir. 2011). It mandates that a tribe must obtain authorization from a state before conducting Class III gaming on land within that state's borders. 25 U.S.C. § 2710(d)(1)(C).  This authorization can be secured through a negotiated agreement between the tribe and the state, called a "tribal-state compact," or, in cases where the tribe and the state cannot agree, through "secretarial procedures" laid out by the Secretary of the Interior in consultation with the tribe and a mediator.  *See* 25 U.S.C. § 2710(d)(3)(A) (tribal-state compact), (d)(7)(B)(vii) (secretarial procedures).  The Mohegan Tribe operates a casino on its land pursuant to a Compact with Connecticut, and the Pequot operates one on its lands pursuant to secretarial procedures.  Compl. ¶ 25 (citing 56 Fed. Reg. 24,996 (May 31, 1991) ("Pequot Procedures"); 59 Fed. Reg. 65,130 (Dec. 16, 1994) ("Mohegan Compact")); Mem. P. & A. Supp. Mot. for Limited Intervention at 1–2 ("Mot. Intervene"), ECF No. 24-1.  Each Tribe has also executed a Memorandum of Understanding with Connecticut relating to their casino operations.  Compl. ¶ 27; *see* Mot. Intervene at 2 (referencing "related Memoranda of Understanding").

In 2015, the Tribes formed a joint venture, MMCT Venture LLC ("MMCT"), with the aim of building and operating an off-reservation, commercial casino in East Windsor, Connecticut.  *Connecticut I*, 344 F. Supp. 3d at 291; Compl. ¶¶ 39–40.  Because this type of casino was not permitted under the Mohegan Compact, Pequot Procedures, and related Memoranda of Understanding, Connecticut passed a law, Public Act 17-89, providing authorization for the casino but stating that this authorization would not be effective unless and

until those documents were amended and those amendments approved by the Secretary of the Interior. *Connecticut I*, 344 F. Supp. 3d at 291–2; Compl. ¶¶ 42–45; *see* 2017 Conn. Acts 17-89 (Reg. Sess.).[1]  The Tribes and Connecticut approved and executed the necessary amendments thereafter and requested approval from the Department of the Interior's Office of Indian Gaming. *Connecticut I*, 344 F. Supp. 3d at 292.  When the Secretary "returned" the proposed Amendments without approving them, Connecticut and the Tribes filed suit in this Court under the APA and IGRA seeking an order compelling their approval. *Id.* at 292–93.  Interior later recognized that the Mohegan Amendments were "deemed approved"[2] and the Mohegan dropped out of the case. 83 Fed. Reg. 25,484 (June 1, 2018); Mot. Intervene at 4.

MGM moved to intervene as a defendant, arguing that the East Windsor casino would create new competition very close to an MGM casino in Springfield, Massachusetts, and that the Amendments' handling of royalty payments would incentivize Connecticut to prefer future development proposals from MMCT over otherwise comparable proposals from MGM.  *See Connecticut I*, 344 F. Supp. 3d at 297.  The Court granted MGM's intervention motion.  *Id.* at 306.  At the same time, however, it granted a motion to dismiss the action for failure to state a claim.  *Id.*  Thereafter, Connecticut and the Pequot moved to amend their complaint and the Court granted this motion as well.  *Connecticut II*, 363 F. Supp. 3d at 50.  Thereafter, Interior approved the Pequot Amendments, 84 Fed. Reg. 11,122 (Mar. 25, 2019), and the parties

---

[1] Public Act 17-89 is available at https://www.cga.ct.gov/2017/ACT/pa/pdf/2017PA-00089-R00SB-00957-PA.pdf. The Court takes judicial notice of this Act as a public record. *See Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013) (taking judicial notice of document posted on the District of Columbia's Retirement Board website); *Johnson v. Comm'n on Presidential Debates*, 202 F. Supp. 3d 159, 167 (D.D.C. 2016) (taking judicial notice of "political and statistical facts that the Federal Election Commission has posted on the web").

[2] The distinction between amendments that have been "approved" as opposed to "deemed approved" is relevant to the merits of this case but not particularly important for the resolution of this motion.

stipulated to dismissal of the *Connecticut* case, *Connecticut v. Dep't of the Interior*, No. 17-cv-02564, ECF 40 (D.D.C. June 15, 2018).

MGM then filed this action in which they allege that Interior's approval of the Pequot Amendments and deemed approval of the Mohegan Amendments violated the APA and the IGRA. *See generally* Compl. As mentioned above, the Government Defendants have moved to dismiss. Motion to Dismiss, ECF No. 16. Connecticut and the Tribes seek limited intervention for the purpose of moving to dismiss the case under Federal Rule of Civil Procedure 19 for failure to join an indispensable party. Mot. Intervene, ECF No. 24-1. Movants have submitted, but not filed, a proposed motion to dismiss arguing that the case cannot proceed without them because they are indispensable parties but that they cannot be joined because they are entitled to sovereign immunity. *See* Intervenor Tribes and State of Conn.'s Mot. to Dismiss, ECF No. 24-2. The Government Defendants "take no position on the Motion for Limited Intervention." Fed. Defs.' Resp. to Mot. for Limited Intervention at 1, ECF No. 31. MGM opposes limited intervention, but says it would not oppose Movants' intervention as full parties to the litigation. Pl.'s Opp'n to Mot. for Limited Intervention ("Opp'n") at 2, ECF No. 34. The Motion to Intervene is now ripe for decision.

## II.  LEGAL STANDARD

"The right of intervention conferred by Rule 24 implements the basic jurisprudential assumption that the interest of justice is best served when all parties with a real stake in a controversy are afforded an opportunity to be heard." *Hodgson v. United Mine Workers*, 473 F.2d 118, 130 (D.C. Cir. 1972). Specifically, Rule 24(a) provides that:

> [o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede

the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a).

The D.C. Circuit has established that the right to intervene under Rule 24(a) depends on the applicant's ability to satisfy four factors: (1) whether the motion to intervene was timely; (2) whether the applicant claims an interest relating to the property or transaction that is the subject of the action; (3) whether the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) whether the applicant's interest is adequately represented by existing parties. *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003) (citations omitted); *see also Jones v. Prince George's Cty.*, 348 F.3d 1014, 1017 (D.C. Cir. 2003) (listing the four elements of Rule 24(a) as "timeliness, interest, impairment of interest, and adequacy of representation"). In addition, an applicant seeking to intervene as of right under Rule 24(a) must possess Article III standing to participate in the lawsuit. *See Jones*, 348 F.3d at 1017; *Fund for Animals*, 322 F.3d at 731–32. "Courts are to take all well- pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections." *WildEarth Guardians v. Salazar*, 272 F.R.D. 4, 9 (D.D.C. 2010) (quoting *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001)).

## III.  ANALYSIS

### A.  Standing

Before reaching the Rule 24(a) factors, the Court must consider whether the Movants have Article III standing to participate in the lawsuit. "It is axiomatic that Article III requires a showing of injury-in-fact, causation, and redressability." *Deutsche Bank Nat'l Tr. Co. v. Fed.*

*Deposit Ins. Corp..*, 717 F.3d 189, 193 (D.C. Cir. 2013).  In *Lujan v. Defs. of Wildlife,* 504 U.S. 555 (1992), the Supreme Court described the injury-in-fact element as requiring a showing of an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. *Id.* at 560.  "Where, as here, a party seeks to intervene as a defendant to uphold an action taken by the government, the party must establish that it will be 'injured in fact by the setting aside of the government's action it seeks to defend, that this injury would have been caused by that invalidation, and the injury would be prevented if the government action is upheld.'"  *Forest Cty. Potawatomi Cmty. v. United States*, 317 F.R.D. 6, 11 (D.D.C. 2016); (quoting *Am. Horse Prot. Ass'n, Inc. v. Veneman*, 200 F.R.D. 153, 156 (D.D.C. 2001)).

In this lawsuit, MGM seeks to vacate Interior's decisions approving the Mohegan Amendments and deeming approved the Pequot Amendments, which are agreements among the Movants.  *See* Compl. at 32.  If that approval were vacated, those agreements would no longer be effective.  *See Connecticut I*, 344 F. Supp. 3d at 291 ("By their terms, both the Pequot Procedures and the Mohegan Compact . . . do not become effective until the Secretary approves them and publishes notice of that approval . . . .").  Rendering their agreements ineffective would do an obvious injury to the Movants.  By MGM's own characterization, the Amendments "authorize a proposed commercial casino gaming facility in East Windsor Connecticut," in which all three Movants have obvious interests.  Compl. at 1.  MGM's success in this lawsuit would render the agreements ineffective, and a successful defense of Interior's actions would redress that potential injury by avoiding it entirely.

Notably, MGM has raised no argument against the Movants' standing.  *See* Opp'n.  This is not surprising.  It stands to reason that if the Tribes and Connecticut were able to sue in the

Court's prior case based on Interior's non-approval of the Amendments, they would be injured once more by a vacatur that returns things to the pre-approval state that was the basis for their earlier complaint.  The Movants therefore have standing to intervene in this case.  It is essentially a mirror image of the previous round of litigation.

### B.  Rule 24

MGM also has not addressed whether the Movants meet the four prerequisites for intervention identified in Federal Rule 24(a).  *See* Opp'n.  Again, the Movants meet these prerequisites in a straightforward manner, so the Court need only address them briefly before turning to MGM's procedural arguments.

First, the Motion for Limited Intervention was filed in a timely manner.

> Timeliness is to be judged in consideration of all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case."

*Amador Cty. v. U.S. Dep't of Interior*, 772 F.3d 901, 903 (D.C. Cir. 2014) (quoting *United States v. British Am. Tobacco Austl. Servs., Ltd.*, 437 F.3d 1235, 1238 (D.C. Cir. 2006)).  MGM's complaint was filed on August 7, 2019.  *See* ECF Nos. 1, 3.  The Motion was filed on October 22, 2019, about two weeks after the Government Defendants filed their motion to dismiss.  *See* ECF Nos. 16, 24.  This Court finds that the motion to intervene was reasonably prompt, that the parties will not be prejudiced (none has argued otherwise), and that the few weeks that briefing on Movants' motion to dismiss will require will not unduly disrupt or delay the litigation.[3]

---

[3] This delay might be unavoidable in any event.  The Court has an independent obligation to raise and look into Rule 19 issues *sua sponte*.  *Cook v. Food & Drug Admin.*, 733 F.3d 1, 6 (D.C. Cir. 2013) (quoting *Wichita & Affiliated Tribes v. Hodel*, 788 F.2d 765, 772 n.6 (D.C. Cir. 1986)).  Given that the Movants have raised this issue, even if they were non-parties, the Court would need to consider it, and would potentially seek briefing from MGM and the Government Defendants on the issue regardless of whether Movants enter the case.

Moving on to the second and third factors in Rule 24(a), the Court also finds that the Movants have demonstrated "a legally protected interested" and that the Movants are so situated that the disposition of this action could impair or impede their ability to protect that interest. *SEC v. Prudential Sec., Inc.*, 136 F.3d 153, 156 (D.C. Cir. 1998).  Where, as here, a prospective intervenor "has constitutional standing, it *a fortiori* has 'an interest relating to the property or transaction which is the subject of the action.'" *Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 320 (D.C. Cir. 2015) (quoting *Fund for Animals*, 322 F.3d at 735); *see also Safari Club Int'l v. Salazar*, 281 F.R.D. 32, 38 (D.D.C. 2012) ("The injury-in-fact and causation connection with the challenged action requirements for standing are closely related to the second and third factors under Rule 24(a) . . . .").

The final Rule 24(a) factor requires that the Court evaluate whether existing parties would adequately represent the Movants' interests in the case.  As the Court noted when MGM sought to intervene in the prior action, the Supreme Court has explained that the adequate representation requirement of Rule 24(a) "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and [that] the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n.10 (1972).  The D.C. Circuit has likewise described this requirement as "not onerous." *Dimond v. District of Columbia,* 792 F.2d 179, 192 (D.C. Cir. 1986).  Even in cases like this one, where the intervenor and the government may agree in broad terms on a legal position or course of action, the D.C. Circuit nonetheless "often [has] concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals,* 322 F.3d at 736.  This is primarily because the government entity's overarching "obligation is to represent the interests of the American people," while the intervenor's obligation is to represent its own interests. *Id.*  Here,

the Movants intend to argue their own sovereign immunity. *See* Mot. Intervene at 9. The federal government does not share this interest, nor does it share the Movants' interest in the casino that the Amendments' approval would authorize. On the other side, Movants and MGM are plainly at odds and have divergent interests. The final factor from Rule 24(a) is thus fulfilled.

MGM raises two procedural arguments against MGM's motion. The first of these is that while MGM says it "has no objection to participation by [the Tribes and Connecticut] as full parties to the case" it opposes their request for "limited" intervention on the ground that the federal rules require them to "interven[e] fully or not at all." Opp'n at 2. The D.C. Circuit has not spoken directly on this issue, but some precedent suggests that limited intervention is permissible in this sort of circumstance. In *Vann v. Kempthorne*, 534 F.3d 741 (D.C. Cir. 2008), the Cherokee Nation had intervened at the district court level for the same limited purpose the Mohegan and Pequot tribes assert here: "challenging the suit under . . . Rule 19 . . . on the grounds that although it was a necessary and indispensable party, sovereign immunity barred its joinder." *Id.* at 745. The D.C. Circuit reversed in part a district court decision denying the Cherokee Nation's motion to dismiss, and gave no indication that limited intervention was improper. *See id.* at 756. The D.C. Circuit has also allowed a party to intervene at the appellate level for the limited purpose of asserting an immunity defense. *Fields v. Office of Eddie Bernice Johnson*, No. 04-5315 (D.C. Cir. May 5, 2005) (per curiam order granting motion "to intervene for the limited purpose of asserting speech or debate clause immunity"), 459 F.3d 1, 6 (D.C. Cir. 2006). A number of cases from outside this Circuit, some of which the Movants identified, also suggest that limited intervention is permissible under these circumstances. *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 327 F. Supp. 2d 995, 1000 (W.D. Wis. 2004) ("Those entities [that have sovereign immunity] may intervene for a limited purpose such

as moving to dismiss the lawsuit for failure to join an indispensable party without waiving their sovereign immunity."), *aff'd*, 422 F.3d 490 (7th Cir. 2005); *Kansas v. United States*, 249 F.3d 1213, 1220–21, 1231 (10th Cir. 2001) (affirming the grant of a preliminary injunction in a case where a tribe had voluntarily intervened in order to join a motion to dismiss for lack of subject matter jurisdiction and to raise an ultimately unsuccessful Rule 19 argument for dismissal based on sovereign immunity); *Citizens Against Casino Gambling in Erie County v. Kempthorne*, 471 F. Supp. 2d 295, 312 (W.D.N.Y. 2007) (allowing a the Seneca Nation of Indians to submit an *amicus* brief raising Rule 19 issues while also noting that "[a]s other tribes have done, it could have moved to intervene for the sole purpose of seeking Rule 19 dismissal").

Arguing against this, MGM points to "the general rule" that "[i]ntervenors under Rule 24(a)(2) assume the status of full participants in a lawsuit and are normally treated as if they were original parties once intervention is granted." *District of Columbia v. MSPB*, 762 F.2d 129, 132 (D.C. Cir. 1985). The cases MGM cites for this "general rule" do not involve parties that sought limited intervention. Opp'n at 2–3 (citing *Schneider v. Dumbarton Developers, Inc.*, 767 F.2d 1007, 1017 (D.C. Cir. 1985); *MSPB*, 762 F.2d at 132)). In reviewing these relatively straightforward requests for intervention, the Circuit would have had no reason to elaborate on anything more than the basic rule. MGM also cites *Wichita and Affiliated Tribes of Oklahoma v. Hodel*, 788 F.2d 765 (D.C. Cir. 1986), but that case is likewise distinguishable. Opp'n at 3. There, two tribes had successfully moved to intervene as defendants, arguing that they were indispensable parties; one of those intervening tribes then brought a cross-claim against the Government. 788 F.2d at 771. Neither tribe sought to intervene on a limited basis, and one was seeking extensive involvement by bringing a cross-claim. *Id.* The Court is thus unpersuaded by

this collection of cases, all of which additionally predate those favoring the Movants by quite some time.

MGM also points to a more recent concurrence by Judge Randolph in *Amador County v. U.S. Dep't of the Interior*, 772 F.3d 901 (D.C. Cir. 2014), which suggested that a tribe should not be able to use sovereign immunity as a basis for intervention under Rule 24(a)(2) because sovereign immunity is not at issue in the case until the tribe intervenes, and thus does not qualify as an "interest relating to the property or transaction that is the subject of the action." *Id.* at 906 (Randolph, J., concurring) (quoting Fed. R. Civ. P. 24(a)(2)); Opp'n at 3.  A Circuit concurrence is not binding on this Court, nor are any of the cases to which Judge Randolph cites in his. It is not clear to this Court that the interest relating to the action required under Rule 24(a)(2) necessarily needs to be the same interest that a party asserts once it intervenes.  Nothing in this Circuit's Rule 24 precedent states that a party cannot get its foot in the door with one interest and then argue based on a different theory.  *Vann*, which is binding precedent, suggests that a motion akin to the one filed by these Movants can succeed, 534 F.3d at 745, provided that it is timely, unlike the motion in *Amador County*, 772 F.3d at 906.  Accordingly, the Court will not adopt MGM's "all or nothing" approach to intervention.

MGM's second procedural argument is that the Motion to Intervene is improper because Movants have not attached the pleading required by Rule 24(c). Opp'n at 6. That rule states that "[a] motion to intervene . . . must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c).  However, courts in this Circuit have not applied this rule particularly rigidly.  *E.g.*, *Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 395 F. Supp. 3d 1, 21 n.4 (D.D.C. 2019) (citing *Spring Constr. Co. v. Harris*, 614 F.2d 374, 376–77 (4th Cir. 1980)) (holding that where

12

the intervenors' position was apparent and where the parties would not be prejudiced by intervention, "failure to include . . . a copy of [intervenors'] proposed answer to the Complaint does not procedurally bar [them] from intervening"); *Massachusetts v. Microsoft Corp.*, 373 F.3d 1199, 1236 n.19 (D.C. Cir. 2004) (citing *McCarthy v. Kleindienst*, 741 F.2d 1406, 1416 (D.C. Cir. 1984) ("[P]rocedural defects in connection with intervention motions should generally be excused by a court.")); *Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 395 F. Supp. 3d 1, 21 n.4 (D.D.C. 2019). The D.C. Circuit has explicitly noted its "willingness to adopt flexible interpretations of Rule 24 in special circumstances." *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1045–46 (D.C. Cir. 1998) (citing *Textile Workers Union v. Allendale Co.*, 226 F.2d 765, 767 (D.C. Cir. 1955) (en banc) ("Obviously tailored to fit ordinary civil litigation, these [Rule 24] provisions require other than literal application in atypical cases.")).

"The purpose of the rule requiring the motion to state the reasons therefor and accompanying the motion with a pleading setting forth the claim or defense is to enable the court to determine whether the applicant has the right to intervene, and, if not, whether permissive intervention should be granted." *Miami Cty. Nat'l Bank of Paola v. Bancroft*, 121 F.2d 921, 926 (10th Cir. 1941). There can be no mistake on those fronts here, as Connecticut and the Tribes have explained their interest and their intent to argue their immunity from suit and the impracticability of joining them as parties. Mot. to Intervene at 5. Given the posture of the case and the arguments that Connecticut and the Tribes plan to raise, it would not make sense to require an answer from the intervenors at this time. *Cf. Microsoft Corp.*, 373 F.3d at 1236 n.19 (permitting a motion to intervene without an attached pleading in a case where "judgment had already been rendered" and it was unclear "what type of pleading the would-be intervenors could have filed"). When a party is asserting an immunity defense, it may not even be appropriate for

a court to require them to address the merits of a lawsuit before resolving the immunity

argument. *See Process & Indus. Developers Ltd. v. Federal Republic of Nigeria*, 962 F.3d 576,

584 (D.C. Cir. 2020) (holding that a "district court erred in requiring [a foreign sovereign] to

defend the merits before resolving its colorable immunity assertion"); *cf. Mitchell v. Forsyth*, 472

U.S. 511, 525 (1985) ("[T]he essence of absolute immunity is its possessor's entitlement not to

have to answer for his conduct in a civil damages action.").  In fact, the filing of an answer

contributes to the waiver of sovereign immunity in some circumstances.  *E.g.*, *Ashraf-Hassan v.

Embassy of France in the United States*, 40 F. Supp. 3d 94, 101–02 (D.D.C. 2014).  Under

circumstances like these, there is good reason to allow a motion to intervene notwithstanding the

lack of an attached pleading.[4]

## IV.  SCHEDULING MOTION

Also pending before the Court is a Motion by MGM seeking a scheduling order that

would govern further proceedings.  Mot. to Govern Further Proceedings, ECF No. 28.  The

Government Defendants and the Movant-Intervenors each filed responses.  Opp'n of Intervenors

to Pls.' Mot. to Govern Further Proceedings, ECF No. 30; Pls.' Reply in Supp. of Mot. to Govern

Further Proceedings, ECF No. 32.  In these filings the parties addressed the order in which they

believed the pending motions should be addressed and decided.  To a large extent this motion

was overtaken by events.  The parties briefed the Motion for Limited Intervention and the

Government Defendants' Motion to Dismiss without the benefit of a Scheduling Order.  The

---

[4] Movants argue, correctly, that MGM's opposition was filed thirty-one days after their motion to intervene and that it was thus untimely under Local Rule 7(b).  Because the opposition fails on the merits, there is no prejudice to the Movants and the Court need not determine whether the late filing should be considered a waiver.

parties also addressed which motion(s) they believed the Court ought to address first.  The issuance of this opinion moots whatever is left of their arguments on this front.

The Court has resolved the Motion for Limited Intervention first.  This means that the Intervenors' previously lodged Motion to Dismiss will be filed and docketed.  The Court will await additional briefing on that motion before ruling on either motion to dismiss.  In the Court's contemporaneously-issued Order, the Court has ordered the parties to submit a proposed schedule governing briefing on this motion.  The motion seeking a scheduling order is therefore denied as moot.

## V.  CONCLUSION

For the foregoing reasons, the State of Connecticut and the Tribes' Motion for Limited Intervention (ECF No. 24) is **GRANTED** and Plaintiff's Motion to Govern Further Proceedings (ECF No. 28) is **DENIED AS MOOT**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  September 16, 2020                                             RUDOLPH CONTRERAS
                                                                                         United States District Judge